| | |
|---|---|
| William Peterson III, | Court File No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| Harrah's NC Casino Company, LLC, and Caesers Entertainment, Inc., | |
| Defendants. | |

The Plaintiff, William Peterson III, for his Complaint against Defendants, states and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff, William Peterson III, ("Plaintiff") is a natural person who resides in the County of Haywood, State of North Carolina.

2. Defendant Harrah's NC Casino Company, LLC ("HNCC"), is a North Carolina corporation with a registered office address in the City of Raleigh, State of North Carolina.

3. HNCCC operates the Harrah's Cherokee Casino Resort in Cherokee, Jackson County, North Carolina.

4. HNCCC is an entity owned by Harrah's Entertainment, Inc. ("Harrah"), which is owned by Caesars Entertainment Inc. ("Caesars"), a hotel and

casino entertainment company that owns, operates, or manages more than 50 properties and is the largest casino entertainment company in the United States.

5. Defendants are a "single employer" as they are part of a single, integrated enterprise consisting of any combination of one or more of the following: (1) Defendants have an interrelation of operations; (2) Defendants share common management; (3) Defendants have a centralized control of labor relations; and (4) Defendants share common ownership or financial control.

6. Alternatively, Defendants are "joint employers and/or integrated employers," as they handle certain aspects of their employer-employee relationships jointly.

7. At all times relevant hereto, Plaintiff and Defendants were "employee" and "employer," respectively, within the meaning of 42 U.S.C. § 12111.

8. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

9. Venue is proper in United States District Court, Western District of North Carolina, as the acts and/or omissions giving rise to this Complaint occurred in the Western District of North Carolina.

## **FACTS**

10. Plaintiff began his employment with Defendants in or around June 2016.

11. Defendants employed Plaintiff as a Table Games Dealer.

12. During his employment with Defendants, Plaintiff received positive performance feedback.

13. During his employment with Defendants, Plaintiff did not have any disciplinary history prior to the events at issue in this litigation and as set forth in this Complaint.

14. Plaintiff is a United States Army veteran.

15. The United States Army has determined that Plaintiff has a service-connected disability.

16. Specifically, Plaintiff is diagnosed as having post-traumatic stress disorder and major depressive disorder.

17. Plaintiff reported to Defendants that he is a disabled veteran.

18. On February 7, 2021, during Plaintiff's shift, a fire alarm was triggered; the fire alarms and intercom system instructed everyone to evacuate.

19. Plaintiff proceeded to secure his game table and prepared to evacuate, as he was trained to do by Defendants.

20. Plaintiff's shift supervisor, Enrique Hornedo ("Hornedo"), instructed Plaintiff and other table games dealers that they should not evacuate.

21. Instead, Hornedo told Plaintiff and other table games dealers to continue to deal hands to customers.

22. When Plaintiff stated that those instructions were illegal, and that Hornedo was putting Plaintiff and his coworkers' safety at risk, Hornedo laughed and asked Plaintiff how long he had worked in the casino industry.

3

23. Plaintiff also observed multiple issues leading to an unsafe environment during the fire alarm, including:

   a. employees on gaming floor instructed not to evacuate,

   b. cage cashiers being forced to stay inside and secure the money during the evacuation,

   c. security guards not evacuating hundreds of guests who crowded near exits,

   d. employees being exposed to potential asphyxiation hazards,

   e. exits blocked due to construction.

24. Plaintiff's concerns about the safety hazards were particularly acute due to his experiences as a disabled army veteran.

25. On February 8, 2021, Plaintiff filed an internal incident report with Defendants reporting his safety concerns.

26. That same day, Plaintiff met with Mindy Pratama, Manager of the Table Games Department, and Melanie Lefebvre, Assistant Casino Manager.

27. Plaintiff reported to Pratama and Lefebvre and reported that the unsafe environment during the fire alarm had triggered his army-service related disability.

28. Until the fire alarm and evacuation incident on around February 7, 2021, Plaintiff's disability had not caused any issue, incident, or distraction during his employment with Defendants.

29. As a result of the February 7 fire alarm and evacuation incident, and Defendants' refusal to acknowledge the seriousness of the event, Plaintiff's disability was aggravated.

30. As a result, for the first time since his employment with Defendants, on or around March 15, 2021, Plaintiff requested intermittent leave under the Family Medical Leave Act ("FMLA") due to his disability. Plaintiff made this request to his supervisor, Patrick Mulder.

31. Plaintiff stated he required FMLA leave to allow him to have protected leave if and when his disability was aggravated and might need to take a break or leave from work.

32. Mulder notified his Manager, David Miller, of Plaintiff's requests.

33. Minutes later, Mulder instructed Plaintiff not to speak about the FMLA at work, and that he would be disciplined if he violated those instructions.

34. Mulder stated the instructions came from Miller.

35. Later that same shift, on March 15, 2021, Plaintiff took his normal break and asked shift supervisor Chris Mosier why he was not being allowed to leave work pursuant to his reasonable accommodation, as his disability symptoms were worsening.

36. Mosier responded that they were already utilizing available replacements to cover breaks, and there was nobody to cover Plaintiff's job duties.

5
Case 1:24-cv-00158-MOC-WCM    Document 1    Filed 05/28/24    Page 5 of 12

37. Plaintiff requested an update from Mulder about his request to leave early pursuant to his reasonable accommodation, again explaining his disability related symptoms were worsening.

38. Plaintiff then told Miller that he needed to go home immediately due to his worsening symptoms.

39. In response, Miller was rude and aggressive toward Plaintiff.

40. Miller finally allowed Plaintiff to leave work, approximately one hour after Plaintiff's request during which Plaintiff's health deteriorated.

41. A few days later, on or around March 17, Plaintiff made a complaint with Defendants' Human Resources Department Manager, Allen Mills, and Executive Table Games Director, Ron Hager.

42. Plaintiff reported the delay in response to his reasonable accommodation request; Miller's instructions not to discuss FMLA at work; and Miller's rude and aggressive behavior after Plaintiff's symptoms worsened.

43. Plaintiff also stated he felt management was not properly trained to address issues like his, and he was concerned for his health as a result.

44. Plaintiff requested an explanation of his legal rights surrounding his service-related disability and reasonable accommodation.

45. On or around March 18, 2021, Plaintiff participated in a Zoom conference call with Mills as well as Benefits and Wellness Manager, Arnie Braswell, and Human Resources supervisor, Warren Snyder.

46. On this call, Defendants did not provide Plaintiff with any information on company policies or expectations regarding reasonable accommodations or FMLA leave. Plaintiff was not advised of his legal rights, as he had requested.

47. On April 25, 2021, Plaintiff arrived to work and was immediately suspended by Miller and Lefebvre.

48. Then on April 29, 2021, Defendants terminated Plaintiff's employment.

49. Defendants also banned Plaintiff from the property for 30 days.

50. When Plaintiff inquired why he was banned, Mills stated it was because of Plaintiff's emotional distress, veteran's status, and health history.

51. Mills stated Defendants were "taking precautions" due to "everything going on in the world, with active shooters and terrorism."

52. The reason Defendants gave for Plaintiff's termination was violation of company code of conduct, specifically professional judgment, stemming from alleged incidents on April 16 and 18 with toke bets placed by a player at his table.

53. Defendants did not provide a warning or counseling to Plaintiff, and their argument for what Plaintiff should have done differently contradicts the company code of conduct.

54. Defendants' reason for Plaintiff's termination was a pretext to engage in unlawful discrimination and retaliation in violation of laws that protect Plaintiff.

55. At the termination meeting Mills told Plaintiff that he would be eligible for rehire within one (1) year.

56. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around October 25, 2021, alleging disability discrimination in violation of the Americans with Disabilities Act.

57. Plaintiff subsequently amended his Charge of Discrimination to include Defendants rescinding a job offer and refusing to hire him—and even refusing to consider him for hire—because of his disability and protected activity.

58. Plaintiff has been issued a right-to-sue notice from the EEOC and has timely commenced this action.

59. Beginning in approximately July 2022, Plaintiff began to apply for jobs with Defendants for which he was qualified.

60. In fact, Plaintiff was offered a position with Defendants and was scheduled to interview for another position with Defendants on or around July 22, 2022.

61. Immediately prior to his scheduled job interview on July 22, 2022, Plaintiff was told that he would not be interviewing for the position.

62. On July 28, 2022, Plaintiff had a telephone meeting with Mills and Leann Bridges.

63. During that telephone call Mills told Plaintiff that his job offer was rescinded.

64. During that telephone call Mills told Plaintiff that he was no longer eligible for rehire with Defendants.

65. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
### (Against both Defendants)

Plaintiff re-alleges each and every paragraph of this Complaint.

66. Defendants, by and through their managers and officials acting on behalf of Defendants, and within the scope of their employment or authority, discriminated against Plaintiff in employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq*.

67. These practices include, but are not limited to, terminating Plaintiff's employment with Defendants, rescinding a job offer, and refusing to hire him because of his disability.

68. The unlawful employment practices complained of were intentional and were performed by Defendants with malice and/or reckless indifference.

69. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer from emotional distress, loss of wages and benefits, and other serious damages.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
### (Against both Defendants)

Plaintiff re-alleges each and every paragraph of this Complaint.

9

70. Defendants, by and through their managers and officials acting on behalf of Defendants, and within the scope of their employment or authority, retaliated against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C § 12111 *et seq*.

71. Plaintiff engaged in statutorily protected activity by requesting accommodations for his disability, by filing a Charge of Discrimination with the EEOC, and participating in an investigation by the EEOC.

72. Upon information and belief, Defendants employs at least fifty employees.

73. Defendants engaged in unlawful retaliatory employment practices in violation of the ADA because Plaintiff engaged in activity protected by the ADA. These practices include, but are not limited to, terminating Plaintiff's employment with Defendants, rescinding a job offer, and refusing to hire him because of his protected activity.

74. The unlawful employment practices complained of were intentional and were performed by Defendants with malice and/or reckless indifference.

75. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer from emotional distress, loss of wages and benefits, and other serious damages.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendants for the following:

10
Case 1:24-cv-00158-MOC-WCM   Document 1   Filed 05/28/24   Page 10 of 12

a. That Defendants' acts and/or omissions described in this Complaint constitute violations of applicable federal laws that protect Plaintiff;

b. That Defendants' and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, be enjoined from its unlawful acts;

c. That Defendants be required to make Plaintiff whole for their adverse, discriminatory, retaliatory, and unlawful actions with backpay, front pay, and compensatory damages and with pre- and post-judgment interest of an appropriate amount;

d. That Defendants be required to pay Plaintiff punitive damages as set forth by statute;

a. That Plaintiff be reinstated to his job, or, in the alternative, be awarded front pay and the monetary value of any employment benefits he would have been entitled to by Defendants;

e. That the Court award Plaintiff his attorneys' fees, costs, and disbursements pursuant to statute; and

f. That the Court grant other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

Dated: May 28, 2024          **LELAND CONNERS PLC**

/s/ Daniel Gray Leland
Daniel Gray Leland, (MN No. 389027)
(*Pro Hac Vice* forthcoming)
60 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 255-2255
Email: dan@lelandconners.com

**ASHEVILLE LEGAL**

/s/ Jake Snider
Jake Snider (NC No. 46416)
349 Haywood Road
Asheville, NC 28806
Telephone: (828) 350-9799
Email: jsnider@ashevillelegal.com

**Attorneys for Plaintiff**